Transit Authority. Mr. Lawrence is here for the appellant and Mr. Kaufman is here for the appellee Fuller. And Mr. Lawrence, are you ready to proceed with your argument? Yes, Your Honor, I'm ready. You may proceed. Good morning, Your Honors, and may it please the Court. My name is Jaron Lawrence and I serve under the jurisdiction of McWilliams, Officer White, and the Metropolitan Atlanta Rapid Transit Authority. The District Court denied the officers' motion for summary judgment on the issue of their entitlement to qualified immunity based on a finding that Stills v. the City of Aventura clearly established that the officers' conduct violated Mr. Fuller's Fourth Amendment rights. The review of this determination is a legal question before the Court, and this Court has jurisdiction to- Why don't you tell us why we have appellate jurisdiction? Because Fuller claims that your assertions that Fuller ignored a command of the officers, resisted arrest, exhibited hostility, is contrary to the testimony and the video evidence. And we've looked at the videos in this case. Why don't you present a question of fact rather than a question of law, if that's the case, if you're disagreeing about, you know, what the evidence shows. And if that's the case, why do we have jurisdiction, appellate jurisdiction, to hear this case? Well, Judge Wilson, I think that it goes beyond those factual discrepancies. The heart of this appeal goes to the District Court's application of the clearly established law to those facts. Looking at the relevant case file, the appellees, they cite Johnson. Johnson, that really restricts the Court's interlocutory jurisdiction when the sole issue is an issue of fact. But in our case, we don't just have a sole question of fact. We're dealing with the question of law, that being what the state of the law was, what law was clearly established, and more importantly, whether or not the officer's conduct was objectively reasonable in light of the state of that law. And under Cottrell v. Caldwell, this Court has specifically held that such appeals, when those issues are presented, the Court does have interlocutory jurisdiction. I have the same question that Judge Wilson had, this Judge Anderson talking. I read your blue brief very carefully a number of times, and every time you made the, what we call the core qualified immunity issue, every time you made that argument, it depended on your assertion that Fuller was resisting arrest and was hostile and belligerent, which is precisely the opposite of what the District Court assumed. The District Court held that a jury, a reasonable jury, could find that he was not resisting arrest, that he'd pull back when McWilliams grabbed him in surprise, and that he was not hostile or belligerent. So that although you do try to make the core qualified immunity argument, it does seem to me, with respect to McWilliams, as opposed to Officer White, it does seem to me that you really make only the evidence sufficiently argument that Judge Wilson talks about. How do you respond to that? And can you point me to any place in your brief where you assume that he was not resisting arrest and was hostile? Well, Gerry Anderson, I think when you look at specifically the situation with Sergeant McWilliams, the question as to whether or not he resisted arrest, the facts that the District Court determined do not negatively affect the qualified immunity analysis. And that's because you have to look at the analysis of whether or not there was probable cause. And in this case, I don't think that there was a dispute as to probable cause, which would give Sergeant McWilliams justification to grab the wrist of Mr. Fuller to effect the arrest. And based on the facts that the District Court determined that Mr. Fuller pulled away after he was grabbed by Sergeant McWilliams, I don't think that there can be a finding that that was not resistance, given that there was probable cause. You are challenging the fact that the District Court assumed. Well, Your Honor, I think it's more of a legal conclusion with respect to that point, specifically given the probable cause. It's clearly established in the law that when there's probable cause for an officer to make an arrest, an officer at a minimum has right to use some force, in this case, the grab of the wrist to effect the arrest. And I would characterize that as a question of law before the court. I do agree. I'm sorry. Go ahead. I'm sorry. Isn't one of the issues, though, not just the grabbing of the wrist, but also the fact that the taser was used? Yes. And I think once you get past that and the situation escalates, looking at the cases that District Court relied on, it was not clearly established under those factual circumstances that deploying the taser one time to bring Mr. Fuller... But isn't the case law clearly established that you can only use a taser if the person was belligerent or aggressive or violent? Are you suggesting that our case law says that you can use a taser for a minor offense for someone who is not being violent or aggressive? I think the... Well, no, I'm not suggesting that to answer the question. But in this case, the physical resistance, the pulling away after a justified grab of his wrist, that latched it up, the level of force that was needed. And it was only... Do you believe that stepping back is the same as being aggressive or violent or belligerent? I just want to know. I think when you couple the stepping back, and I believe the District Court characterized it as pulling away from the grab, when you couple that with the language that he used to get the F off of me, I think that that does rise to the level of aggression, definitely physical resistance. To move on to address... I'll come back to addressing... Sorry, Mr. Williams, I want to move now to the second part of Judge Anderson's question, which dealt with Officer White. And I think as it relates to Officer White, there is no really factual dispute at play that would impact his entitlement to qualified immunity. So it's both parties agree that Officer White, he came onto the scene after or as the physical struggle started, and that his only use of force as it related to Mr. Fuller was grabbing him from behind the moment that he saw him pull away from Sergeant McWilliams, and he lifted him in the air and put him back on the ground where he was on his feet. He hesitated and he couldn't find his handcuffs on his belt, and so he released him. And so the grabbing him from behind, as well as ultimately placing the handcuffs on Mr. Fuller, those were the only uses of force by Officer White. And I think based on those specific uses of force, fields did not clearly establish that that conduct would violate Mr. Fuller's Fourth Amendment rights. I actually think... This is Judge Anderson talking again, and I'm going to ask that very question to your opponent. This will tend to put Plaintiff Fuller on notice to talk about this when he gets up before us. But I... Because we never make up our mind before oral argument, but we do try to know enough about the case to ask intelligent questions. And I do wonder, I am inclined to think that you did make the core qualified immunity argument with respect to White, because at page 25 and 26 of your brief, you do argue that Officer White had just arrived on the scene and observed a physical struggle between Apelli Fuller and Sergeant McWilliams. And the district court did not make any specific findings of fact with respect to how much of the episode that Officer White saw. He may well have come out from the staff room and seen just the part when Fuller pulled away from Officer McWilliams and cursed. And the district court did not address either whether or not a and what he saw would think that that was resistance to arrest. And you do make the argument, which I think may well be the core qualified immunity argument, that the force used by Officer White was less than the force used by Officer Burns, the non-tasing officer in our case, F-I-L-S. I think it's pronounced F-E-A-C-E. So you may respond to that, but that's really a tip off to your opponent to respond to that question in her argument. And yes, Mr. Anderson, that's the point that I was going to make with respect to Officer White and the F-E-A-C-E case. If you're looking at the section... Thank you. Looking at the section of the FISA opinion that dealt with the non-tasing officer, the use of force there was much more significant than the force that Officer White used in our case. There, the officer slammed the plaintiff to the ground to the point where she became F-I-L-S. F-I-L-S. Yes. Fils-or-feis, whichever pronunciation you prefer. But in that case, this court approved of the officer's slamming of the plaintiff to the ground, given the facts that that officer confronted. And I think Officer White's actions are significantly less than what was approved in the Fils case. And also, if you look at the Anthony v. Coffey County case, as it relates to Officer White, what he saw when he saw Mr. Fuller pulling away from Sergeant McWilliams to any reasonable officer, that could appear to have been a situation that could have escalated quickly beyond the initial physical struggle that was there. And under the precedent of this circuit, Officer White should have been granted qualified immunity, specifically under the Fils case, I would argue. All right. Thank you, Mr. Lawrence. We will hear from Mr. Coffman on behalf of Apple Lee Fuller. Yes. Good morning, Your Honors, and may it please the court. My name is Andrew Coffman, and I'm representing Mr. Fuller in this action, in this appeal. I will begin with a discussion of Officer White in this circumstance, because the justification that Officer White articulated for his actions vary from what has been represented in the appeal. What Mr. White testified to in the court below was that he observed Mr. McWilliams attempting to physically handcuff Mr. Fuller. That is to say that he had his handcuffs out, and that he was attempting to place Mr. Fuller's his back, and that when Mr. Fuller then pulled away, that he believed he was resisting arrest. Well, those facts are all disputed, so it's not true. I mean, at least according to the facts presented by Mr. Fuller. Isn't there a dispute that McWilliams did not have his handcuffs out? That is a disputed fact. Mr. McWilliams claims he had his handcuffs out. The judge observed the video and did not see the handcuffs. Mr. Fuller testified that Officer McWilliams did not have his handcuffs out at any time during the encounter. But that was the basis for Mr. White's belief that Mr. McWilliams was in the act of being arrested. Right, affecting an arrest of Mr. Fuller. In addition to that, Mr. White also testified that he heard Sergeant McWilliams at least twice command that Mr. Fuller get on the ground before tasing him. Again, those are disputed facts. No witness testified to that other than officers in the case. There are two eyewitnesses who were present, neither of whom testified that an arrest was taking place. They testified that Mr. Fuller was relaxed and he was calm at the time that Mr. McWilliams grabbed his wrist without any warning or any announcement that there was an arrest about to take place. So I think those facts take this out of the field case for Mr. White. This is Judge Anderson again. Is there any evidence about how much of the episode that Officer White saw? In other words, you heard the possibility that I laid out. Is that a real possibility in this case that Officer White really did not see any of the officer McWilliams grabbing his wrist and Fuller pulling away and cursing? Well, I have two points on that, Judge Anderson, which is the first thing that I mentioned, which was White's testimony below. He submitted an affidavit with his testimony in this case, and he testified that he observed, as I said, Sergeant McWilliams with his handcuffs out, and he heard him instruct Mr. Fuller to place his hands behind his back and attempted to handcuff him when Mr. Fuller pulled away. That is not consistent with the testimony of other witnesses and certainly not consistent with Mr. Fuller's version of the facts. And I would also say, Your Honor, in addition to this, it's not just what Officer White saw when he reacted, but if you, and I know that you all have looked at the video, and it's not the best video, there's no sound or anything, but one of the contentions we made in the court below was that Officer White, it wasn't just a matter of not being able to get his handcuffs, to handcuff Mr. Fuller. He had 10 seconds to do that while he held Mr. Fuller. Mr. Fuller testified that Officer White was pushing him forward towards Officer McWilliams. So our argument below was that Mr. White was merely positioning Mr. Fuller so that he could be tased. Because during this time, Officer McWilliams had his taser out, pointed at Mr. Fuller, and Mr. Fuller said to him, you don't have to do this, while he's being held by Officer McWilliams. At that moment in the video when you watch it, Officer White releases Mr. Fuller, and Mr. Fuller is immediately tased just a second later. So we believe... It is true, however, is it not, that the district court made no findings of fact, and of course you don't make findings at summary judgment, but he assumes facts. The district court assumed no facts that were relevant to Officer White, as opposed to Officer McWilliams. In other words, he didn't separate them at all. He made no assumptions of fact with respect to how much of the episode Officer White felt. Is that not true? Yes, Your Honor. I believe that is fairly accurate. It was very brief. I think towards the end of the order, there's just a reference to Officer White and McWilliams together contending that multiple instructions were given to Fuller regarding the arrest and getting on the ground, which he ignored. The order did not go on. Even if White is challenging some facts, which he clearly is, he also challenges whether there was resisting arrest. But if he also makes the core qualified immunity argument, then our case law says that we do have jurisdiction, and if we do have jurisdiction of White, it seems to me we ought to send it back to the district court to assess those facts that are opposed to the entire episode. And it may well be that he'll say Officer White could see out the window and he saw the whole thing. But we don't know that, do we, right now? Well, as I've already said, he does testify that he saw everything from the moment when he contends Officer McWilliams pulled out his handcuffs and attempted to handcuff Mr. Fuller all the way to the end. Which would be about the time when Officer McWilliams grabbed his wrist. It would have been very close to that time, yes, Your Honor. Right before that. He saw nothing ahead of that, which is part of what the district court relied on, that Mr. Fuller was not resisting at all, and McWilliams just came up and grabbed his wrist. Sorry, answer Judge Anderson's question. Oh, yes, Your Honor. I think that there is no finding in the order that Mr. White had observed the conversational interactions between Officer McWilliams and Mr. Fuller. He only says he saw when Mr. McWilliams pulled the handcuffs out. So I don't know what he saw before that, whether he was watching it on the video or whether he saw it when he came out of the back room. I want to move to, to the extent there's any question about Officer McWilliams here, I think as Judge Anderson has pointed out early, his argument depends entirely on two disputed facts. Number one, that he was attempting to effect a lawful arrest, and number two, that Mr. Fuller was uncooperative and combative during the attempted arrest. And of course, both officers testified that they believed he was squaring up, that Mr. Fuller was squaring up, clenched his fists, was in a fighting stance or an aggressive stance towards McWilliams, all of which justified the force that was used. Those facts are all disputed by the witnesses who, again, testified that Mr. Fuller was calm and relaxed. And up until that point, I think it, the testimony or the evidence is that Mr. Fuller was cooperative. He answered questions from Officer McWilliams. He went over to the elevator bank where he was directed to stand, and he calmly pulled out his phone to make the text message. And so this is, to me, this is similar cases like Alston versus Swarbrick, or even the Field case, where it's not so much about the attempt to arrest as it is an emotional reaction to Mr. Fuller pulling out his cell phone. Because even after the incident was over, Officer McWilliams goes back to the cell phone at the point of contention, right, that he was angry about him pulling out his cell phone or putting his cell phone away immediately when he was asked to do so. So it wasn't so much an arrest that was being done here. It was about an emotional reaction to somebody using their cell phone. Couldn't that pose a threat to the safety of the officer if he pulls out his cell phone and says, I think there was an expletive that was directed at the officer? Well, there was at the moment. I'm sorry. Isn't that one of the factors that you take into consideration in determining whether or not excessive force was used by the officer? Well, Your Honor, Officer McWilliams did testify that he believed a suspect pulling out a cell phone could pose a risk. Frankly, I don't know how, under the circumstances present here, when Mr. Fuller is simply standing calmly, pulls out his cell phone, and he testified. There's no evidence in the record. I don't believe that I saw that the officer McWilliams thought that he was pulling out a gun. No, there was no evidence of that. There was no dispute that it was his cell phone because he asked him to put it away once he began texting his father. I mean, if he wanted to take out his cell phone and videotape the encounter, he's allowed to do so under the First Amendment, correct? He wasn't under arrest. That is correct. Up to that point, according to Mr. Fuller's version of the facts, he was not under arrest and not been instructed anything related to his arrest, even though that's what Sergeant McWilliams contends at that point. Okay. So with that, I have no further argument. All right. Thank you, Mr. Kaufman. And we will hear from Mr. Lawrence, who has reserved some time for rebuttal. Yes, Your Honor. I just want to make a few points. One, to address the court's concern about jurisdiction, specifically as it relates to Sergeant McWilliams. I think the field's opinion itself should give the court guidance. That case was decided on interlocutory appeal following the denial of the officer's motion for summary judgment on qualified immunity. And the court took specific time to point out the discrepancies between both sides in terms of the facts. But the court still retained jurisdiction on interlocutory appeal in the case. The court also broke down both parties, both sides rather, their facts and at the summary judgment state, applied the facts in the light most favorable to the non-moving party. I think that for the court, the court can do the same thing here. I would also argue that the fact that there doesn't seem to be any factual dispute, specifically as it relates to qualified immunity with respect to Officer White, that should give the court jurisdiction to decide the whole case on appeal at a de novo review. With respect to one point that was brought up by Mr. Kaufman, whether or not it's a disputed fact that Sergeant McWilliams was attempting to lawfully arrest Mr. Fuller, I don't think that that fact can be disputed, given that he established probable cause. He observed Mr. Fuller enter the MARTA system without paying his fare. He questioned him. He verified that he did not have any money on the card. He verified that he did not have any identification on him, although it was later found during the search incident to arrest. And that established probable cause for him to lawfully put him into custody. That's under the case law as well as the MARTA policy. So that is not a genuine dispute of fact to the extent that Mr. Kaufman or Mr. Fuller is trying to make that a disputed fact. And the last point that I will make is that the whole purpose of qualified immunity and serving the qualified immunity defense is not necessarily making sure that officers adhere to best practices, but it's giving officers leeway so that they can respond to rapidly evolving situations in the field. This was a relatively short encounter, only lasting approximately 20 seconds or so, and the law should give the sergeant, as well as Officer White, room to allow for that rapidly evolving situation, particularly given the fact that Mr. Fuller did not have justification for pulling away, given that the arrest was supported by probable cause. But again, isn't the issue not the arrest? The issue is the use of excessive force or alleged excessive force. The issue is the use of the alleged excessive force, but I think that the question of whether or not probable cause supported the touching of Mr. Fuller, that's what set everything off. And so once you have the probable cause, it's our position that Mr. Fuller was not justified in pulling away, and that is what constituted the physical resistance, which justified an increase in the level of force. All right. Thank you, Counsel. We'll take the matter under advisement. And call the next case. Thank you. Thank you.